**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| v. | : | **Case No. 20-mj-110 (RMM)** |
| | : | |
| **JERRITT JEREMY PACE,** | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' PRETRIAL MEMORANDUM**
**IN ADVANCE OF PRELIMINARY HEARING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in advance of the preliminary hearing in this matter.

**PROCEDURAL HISTORY**

Defendant was arrested on May 29, 2020. He had his first appearance in D.C. Superior Court on May 30, 2020, where he was charged with arson among other offenses. Defendant was held without bond in that case. On June 11, 2020, Defendant was charged via criminal complaint in this Court, and charged with:

1. Using an instrumentality of interstate commerce to willfully threaten to destroy a building by means of fire or explosive, in violation of 18 U.S.C. § 844(e);

2. Receiving an explosive in interstate commerce with the intent to use it unlawfully to damage or destroy a building, in violation of 18 U.S.C. § 844(d);

3. Willfully damaging, or attempted to damage, a building that was used in an activity affecting interstate commerce by means of fire or explosive, in violation of 18 U.S.C. § 844(i); and

4.  Committing, or attempting to commit, any act to interfere with law enforcement officer's performance of official duties during a civil disorder, in violation of 18 U.S.C. § 231(a).

Following Defendant's initial appearance and detention hearing were held on June 12, 2020, the Court ordered that Defendant be detained pending trial.

## RELEVANT FACTS

**1. Defendant's Social Media Activity Prior on May 29, 2020**

At approximately 2:43 a.m. on May 29, 2020, Defendant posted a link on his Facebook page to a news story reporting that the Minneapolis Police Department Third Precinct station had been set on fire during protests over George Floyd's killing. Exhibit One.[1] In the "Comments" section associated with this link Defendant stated "id love to burn a 12 station[2] to the ground!! burn bitch!!" Id. A short time later, Defendant later added another comment stating, "I WILL BURN A 12 STATION DOWN SO QUICK IF THIS COMES TO MY TOWN.....PLEASE COME ON DC AND LETS RIOT WITH THE REST OF THE NATION!!!!" Id. Defendant followed with the comment, "WISH I HAD THE FLAMES PLUGS WORKING ALREADY" Id.

A short time later, and in response to other comments on this same Facebook post, Defendant posted a link to a YouTube video entitled "*Minneapolis Police Station On Fire Amid Protest Of George Floyd's Killing.*" Id. Defendant then posted a link to another YouTube video entitled "*George Floyd protest – Looters shot, cop cars smashed and fires rage as riots engulf*

---

[1] These statements were taken from Defendant's publicly-available Facebook page. Law enforcement officers have secured a search warrant for Defendant's Facebook account in order to determine the exact time of the Facebook posts and the IP addresses associated with the posts.

[2] "12" is common street slang for law enforcement.

*Minneapolis*." Id. Defendant then added the comments "FUCK IT WE RIOTING" and "BURN IT DOWN," followed by a Google Maps link to the Metropolitan Police Department's Fourth District Station ("4D"). Id.

At 5:03 a.m. on May 29, 2020, Defendant posted an image with a black background with "FACT" written in red letters with the caption "I WILL BURN A 12 STATION DOWN SO QUICK IF THIS COMES TO MY TOWN.....PLEASE COME ON DC AND LETS RIOT WITH THE REST OF THE NATION!!!!" Exhibit Two. Defendant then commented on this post, stating "I KNOW THIS JUST TABLE TALK NOW, BUT RIOT DC N I ALREADY GOT A TORCH FOR REAL!!"

## 2. **Defendant's Actions, Arrest, and Spontaneous Statements on May 29, 2020**

After making these Facebook posts, Defendant filled a plastic laundry detergent container with gasoline and transported it to the Metropolitan Police Department's ("MPD") 4th District Station ("4D"). As he approached 4D, the defendant made two video recordings using his cell phone. In one video, Defendant himself is depicted – proving that he was the person on the scene. In the second video, Defendant records himself walking on the sidewalk, approaching 4D. Defendant states on the video: "[unintelligible] and I don't even give a fuck. They watchin' for real, and I still don't give a fuck. They see me and I still don't give a fuck."

Defendant then set down the phone and leaned it against something so that the video shows a piece of sidewalk and the 4D station and sign. Off-camera, the "click" of a lighter can be heard. Defendant's arm then comes into frame holding a laundry detergent container wrapped in a plastic bag. Defendant had stuffed what appeared to be paper towels into the spout of the container to create a wick, so that the container resembled a Molotov cocktail.



The wick that Defendant fitted into the container was insufficient to prevent gasoline vapors from

escaping the container. When the lighter created a spark, the fumes ignited, causing a flash that

burned Defendant and caused him to drop the container (which he held in his left hand) and the

lighter (which he held in his right hand).



After Defendant dropped the container, it quickly became engulfed in flames as he gathered his cell phone and attempted to flee from the scene.



An MPD detective saw Defendant running from the fireball and gave chase. Defendant was quickly apprehended, and arresting officers noted the strong smell of gasoline on Defendant's clothes and person.

Defendant was transported to Howard University Hospital following his arrest, where he remained under guard by MPD officers. While at the hospital, Defendant made several statements to officers. Specifically, Defendant made the following spontaneous admissions to Officer Koyejo:

- Defendant stated that he posted his intentions on Facebook and was surprised the officers hadn't seen it already.

- Defendant stated that he went to the gas station and personally filled the laundry detergent container with gasoline.

5

- Defendant stated that he should not be arrested because he did not burn anything down, and it could have been "way worse."

- Defendant stated, "That's what going on in Minneapolis. They were hitting it with the damn fire. . . . The whole country is doing this shit—am I not doing it?"

Defendant also made the following spontaneous admissions to Officer Kapres:

- Defendant stated "This is what you all deserve!"

- Defendant stated that he went to 4D because they wouldn't take a robbery complaint from him.

- Defendant stated "it's not like I ran up into your station, all I did was burn down your sign but I didn't even do that."

- Defendant stated "in Minneapolis the whole city did this. You guys have it real real good here."

- Defendants stated "y'all are OK, I didn't hurt anybody, I just wanted to make my video. I had to do it, I didn't have any other way."

## <u>ARGUMENT</u>

The preliminary hearing is governed by Federal Rule of Criminal Procedure 5.1. Under Rule 5.1(e), "[i]f the magistrate judge finds probable cause to believe an offense has been committed and the defendant committed it, the magistrate judge must promptly require the defendant to appear for further proceedings." FED. R. CRIM. P. 5.1(e). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." United States v. Perez, 17 F. Supp. 3d 586, 593 (S.D. Tex. 2014) (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). Nevertheless, probable

cause may be determined "based on a fair probability that the defendant committed the alleged

offense." Id. (quoting Gates, 462 U.S., at 238).

As has long been held by the D.C. Circuit:

It is the contrast of probable cause and proof beyond a reasonable doubt that inevitably makes for examinatorial differences between the preliminary hearing and the trial. Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. Proof beyond a reasonable doubt, on the other hand, connotes evidence strong enough to create an abiding conviction of guilt to a moral certainty. The gap between these two concepts is broad. A magistrate may become satisfied about probable cause on much less than he would need to be convinced. Since he does not sit to pass on guilt or innocence, he could legitimately find probable cause while personally entertaining some reservations. By the same token, a showing of probable cause may stop considerably short of proof beyond a reasonable doubt, and evidence that leaves some doubt may yet demonstrate probable cause.

Coleman v. Burnett, 477 F.2d 1187, 1201-02 (D.C. Cir. 1973) (emphasis added).

The United States bears the burden to prove probable cause during the preliminary hearing,

and all reasonable inferences must be drawn in the prosecution's favor." Perez, 17 F. Supp. 3d at

593-94 (quoting 1 Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 92 (4th ed.

2013); see also United States v. Spencer, 2013 WL 2417976, at *1 (S.D. Ohio June 3, 2013) (citing

United States v. Fuentes, 2012 WL 379589, at *2 (S.D. Tex. Jan. 19, 2012)); United States v. Al–

Ahmad, 996 F. Supp. 1055, 1057 (D. Colo. 1998). The Court has broad discretion to supervise

testimony during the preliminary hearing, which includes "the authority to terminate questioning

once probable cause has been established. Id. (quoting Wright, FEDERAL PRACTICE & PROCEDURE,

at § 92). Defendant is entitled, but not required, to present testimony during the preliminary

hearing, and all cross-examination must be limited to the issue of probable cause – cross-

examination may not be used as a source of discovery. Coleman, 477 F.2d at 1201; Perez, 17 F.

Supp. 3d at 594; Wright, FEDERAL PRACTICE & PROCEDURE, at § 92.

1.  **Probable Cause Exists to Support the Charge of Receiving an Explosive in Interstate Commerce in Violation of 18 U.S.C. § 844(d).**

The Complaint charges Defendant with receiving an explosive in interstate commerce, with the intent to use that explosive to unlawfully damage or destroy a building, vehicle, or other real or personal property, in violation of 18 U.S.C. § 844(d). The elements of this offense are as follows:

A.  Defendant transported or received, or attempted to transport or receive;
B.  any explosive;
C.  in interstate commerce;
D.  with the knowledge or intent that it would be unlawfully used to damage or destroy any building, vehicle, or other real or personal property.

Probable cause exists to support each of those elements.

A.  **Receipt** –

Probable cause to support this element comes from Defendant's own words and cell phone video. Defendant videotaped himself igniting a container before fleeing from the scene. Defendant smelled strongly of gasoline when he was arrested. After his arrest, Defendant spontaneously stated to Officer Koyejo that the accelerant in the container was gasoline, and that he had purchased the gasoline specifically to ignite it at 4D.

B.  **Explosive** –

As noted by the Fifth Circuit Court of Appeals, "Title XI [of the Organized Crime Control Act] both regulates by controlling distribution, transportation and storage of explosives, 18 U.S.C. §§ 842, 843, and criminalizes by providing criminal penalties for their intentional misuse. 18 U.S.C. § 844. The title contains two separate definitions of the term 'explosive,' which correspond respectively to these regulatory and criminal portions." United States v. Lorence, 706 F.2d 512, 514-15 (5th Cir. 1983). Lorence noted a definitional distinction regarding whether gasoline was an "explosive" under Title XI. Specifically, the Court noted that, while gasoline was specifically

excluded from the regulatory definition, Congress specifically noted that "'the exceptions applicable to the regulatory provisions . . . [are] inapplicable to [the criminal] sections." Id. at 517 (quoting H. R .Rep. No. 1549, 91st Cong., 2d Sess. 70, reprinted in 1970 U.S.S.C.A.N. 4007, 4047. Lorence concluded that Congress clearly intended to make gasoline's "intentional destructive use as an explosive a criminal offense." Id.

Other courts are in accord. The Tenth Circuit ruled that gasoline was an "explosive" within the definition of Section 844, noting that "[a]ny person would conclude that the pouring of gasoline around a room with the intention of igniting it or the fumes with an incendiary device was prohibited by sections 844(i) and (j). It is common knowledge that gasoline is highly combustible and capable of exploding. . . ." United States v. Poulos, 667 F.2d 939, 942 (10th Cir. 1982); see also United States v. Beldin, 737 F.2d 450, 453 (5th Cir. 1984) (fuel exposed to the open air is an "explosive"); United States v. Morrow, 717 F.2d 800, 802-03 (3d Cir. 1983) (combination of kerosene fumes and gasoline which was created during an arson was an "explosive"); United States v. Avery, 717 F.2d 1020, 1023 (6th Cir. 1983) (containers of gasoline and propane, with rolled paper wicks, were "explosives") United States v. Bunney, 705 F.2d 378, 380 (10th Cir. 1983) (holding that gasoline poured in a room and ignited by a cigarette was an "explosive"); United States v. Agrillo-Ladlad, 675 F.2d 905, 911 (7th Cir. 1982) (naptha soaked newspaper was an "explosive"); United States v. Hewitt, 663 F.2d 1381 (11th Cir. 1981) (gasoline poured into a closed room through a chimney was an "explosive").

## C. **Interstate Commerce**

The United States is only required to prove that the gasoline moved in interstate commerce – it is not required to prove that Defendant knew the gasoline moved in interstate commerce.

9

United States v. Berberian, 851 F.2d 236, 238-39 (9th Cir. 1988). Any gasoline purchased in Washington, D.C. must move in interstate commerce. There are no gasoline refineries located within the borders of Washington, D.C.

### D.  Knowledge/Intent

Defendant's intent to use the gasoline to damage or destroy a building, vehicle, or other real or personal property comes from his own social media posts, cell phone videos, and statements to the police. Defendant's posted on Facebook his specific intent to burn down a police station – just as they had done in Minneapolis. Indeed, he specifically identified 4D station as the target of his arson, before stating "FUCK IT WE RIOTING" and "BURN IT DOWN." After making those posts, Defendant filled a laundry detergent container with gasoline, fitted it with a wick, and took it to 4D where he videotaped himself trying to ignite the homemade Molotov cocktail.

### 2.  Probable Cause Exists to Support the Charge of Using an Instrumentality of Interstate Commerce to Threaten the Use of Explosives in Violation of 18 U.S.C. § 844(e).

The Complaint charges Defendant with using an instrument of interstate commerce to willfully make a threat to unlawfully damage or destroy a building), vehicle, or other real or personal property, in violation of 18 U.S.C. § 844(e). The elements of this offense are as follows:

A.  Defendant used an instrument of interstate or foreign commerce to;
B.  Willfully make a threat to unlawfully to damage or destroy any building, vehicle, or other real or personal property;
C.  By means of fire or an explosive;

Probable cause exists to support each of those elements.

### A.  Instrument of Interstate Commerce

Defendant used the Internet to post his threat on Facebook. The Internet is an instrument of interstate commerce. United States v. Barlow, 568 F.3d 215, 220 (5th Cir. 2009); United States

v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007); United States v. Trotter, 478 F.3d 918, 921 (8th Cir. 2007) United States v. McEwan, 445 F.3d 237, 246 n.8 (3d Cir. 2006); United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004)

**B.  <u>Willful Threat to Unlawfully Damage or Destroy By Means of Fire or an Explosive</u>**

Defendant's willful threat comes from his own Facebook page. In admiration of the burning of the Minneapolis Police Department's Third Precinct building, Defendant stated "id love to burn a 12 station to the ground!! burn bitch!!" A short time later, Defendant stated "I WILL BURN A 12 STATION DOWN SO QUICK IF THIS COMES TO MY TOWN.....PLEASE COME ON DC AND LETS RIOT WITH THE REST OF THE NATION!!!!" Defendant later added the comments "FUCK IT WE RIOTING" and "BURN IT DOWN," followed by a Google Maps link to the Metropolitan Police Department's Fourth District Station ("4D"). Defendant later repeated his statement that he would "BURN A 12 STATION DOWN SO QUICK" and added "I ALREADY GOT A TORCH FOR REAL!!"

As the Courts have noted, Section 844(e) proscribes only "true threats." In order to sustain a conviction on this count, the United States "must establish a 'true threat,' which means a serious threat as distinguished from words as mere political argument, idle talk or jest." United States v. Spruill, 118 F.3d 221, 228 (4th Cir. 1997) (quoting United States v. Leaverton, 835 F.2d 254, 256 (10th Cir.1987)). As the Tenth Circuit noted, the Court must consider the "context in which [the words" were spoken" in determining whether they constitute a "true threat." Leaverton, 835 F.2d at 256. Chief Judge Howell has held that whether or not a defendant formed the requisite mental state and uttered a "true threat" are "triable facts" which must be determined by the jury. United States v. Pettaway, 297 F. Supp. 3d 137, 150-52 (D.D.C. 2018).

Here, the context of Defendant's statements includes anger and frustration voiced online about protests in other cities. However, the context also includes Defendant's stated desire for the same thing to happen to the 4D station, including the words "BURN IT DOWN" and "I ALREADY GOT A TORCH FOR REAL." More importantly, the context of Defendant's threats includes the fact that, immediately after uttering them, he purchased gasoline, fashioned a Molotov cocktail, and took it to his intended target where he videotaped himself lighting it. The context also includes Defendant's statement to Officer Kapres that "This is what you all deserve!"

**3.**  **Probable Cause Exists to Support the Charge of Attempted Arson in Violation of 18 U.S.C. § 844(i).**

The Complaint charges Defendant with Attempted Arson, in violation of 18 U.S.C. § 844(i). The elements of this offense are as follows:

A.  Defendant maliciously attempted to damage or destroy a building, vehicle, or other real or personal property;
B.  Defendant attempted to do so by means of fire or an explosive;
C.  That at the time of defendant's attempt, the building, vehicle, real, or personal property was used in interstate commerce or was used in an activity affecting interstate commerce.

Probable cause exists to support each of those elements.

**A.**  **Attempted to Damage or Destroy by Means of Fire or an Explosive**

"[T]here must have been sufficient evidence of [Defendant's] intent to commit arson to sustain his conviction for attempted arson." United States v. Gabriel, 510 F.3d 627, 636 (7th Cir. 1987). "Except in extraordinary circumstances, criminal intent cannot be proved by direct evidence; it is therefore not only appropriate but also necessary . . . to look at all of the circumstances." United States v. Haldeman, 559 F.2d 31, 115 (D.C. Cir. 1976). In order to satisfy an attempt, the United States must show that the Defendant acted "with the kind of culpability otherwise required" for the commission of Arson, and that he "took a substantial step toward

committing the crime." United States v. Rovetuso, 768 F.2d 809, 821 (7th Cir.1985) (citing United States v. Mandujano, 499 F.2d 370, 376 (5th Cir.1974), cert. denied, 419 U.S. 1114, (1975)).

Defendant's words and actions demonstrate that he acted with sufficient culpability for the crime of Arson, and took a substantial step toward committing the crime. As noted above, Defendant stated his admiration for Minneapolis protestors who set fire to a police station, and further stated his desire to do the same – specifically identifying the 4D station. He then filled a laundry detergent container with a gasoline, fashioned a Molotov cocktail, and took it to the 4D station where he ignited the wick. He showed little remorse after his arrest and spent time excusing and minimizing his behavior, rather than denying it.

## B. Used in Interstate Commerce or Affected Interstate Commerce

Defendant's intended target, the 4D station, is used in and affects interstate commerce. Indeed, the Supreme Court has specifically noted that the legislative history of the federal arson statute indicates that Congress intended for it to apply to the bombings of police stations. Russell v. United States, 471 U.S. 858, 860 (1985). The Supreme Court reaffirmed this reading Jones v United States, 529 U.S. 848, 853 n.5 (2000). There, Justice Ginsburg, writing for the majority, noted that the legislative history behind the federal arson statute clarified Congress' Intent that the statute "should apply to the bombings of schools, police stations, and places of worship." Id. This interpretation of the Congressional intent makes sense, given the "police department's role as reclaimer of stolen property moving between states, auctioneer of seized goods, and perpetuator of the safety necessary to encourage interstate business growth." United States v. Luton, 352 F.3d 286, 294-95 (6th Cir. 2003). Moreover, as a factual matter, MPD officers protect the D.C.

community, to include in and out-of-state residents. The 4D station is located on Georgia Avenue, a major commuting thoroughfare between the District of Columbia and Maryland.

To be sure, Defendant's stated intent of "BURN[ING] A 12 STATION DOWN" was not realized, because the container ignited before he could throw it. Nevertheless, he is culpable for attempted arson even though the fire did not leave the sidewalk. Indeed, numerous cases have upheld attempted arson convictions under 18 U.S.C. § 844(i) when the intended fire either did not ignite or did not reach the building or vehicle for which it was intended. See, e.g., United States v. Troy, 618 F.3d 27, 29-32 (1st Cir. 2010) (Defendants intended to commit arson, and took substantial step, but no fire was ever set); United States v. Rowe, 13 Fed. Appx. 139, 139-41 (4th Cir. 2001) (Molotov cocktail found under car did not ignite and caused no damage); United States v. Davis, Case No. 94-cr-370, 2016 WL 11257359, at ** 1-2 (E.D.V.A. 2016) (Defendant's aborted attempt to start fire was sufficient to sustain attempted arson conviction).

**4.  Probable Cause Exists to Support the Charge of Interfering with Law Enforcement Officers' Performance of their Official Duties During a Civil Disorder in Violation of 18 U.S.C. § 231.**

The Complaint charges Defendant with Interfering with Law Enforcement during a Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). The elements of this offense are as follows:

A.  Defendant committed or attempted to commit an act to obstruct, impede, or interfere with any fireman or law enforcement officer;
B.  The law enforcement officer was lawfully engaged in the lawful performance of his official duties;
C.  Defendant's commission, or attempted commission, of the act occurred during the course of a civil disorder that obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function.

Probable cause exists to support each of those elements.

### A.  Obstruct/Impede/Interfere With

As noted above, Defendant went to the 4D station with a Molotov cocktail fashioned from a laundry detergent container with the stated intent of burning down the police station. Had he not dropped the Molotov cocktail immediately upon its ignition, and managed to throw it in the direction of the 4D station, he would certainly have obstructed, impeded, or interfered with law enforcement officers inside the 4D station who were engaged in the lawful performance of their duties.

### B.  Civil Disorder

George Floyd was killed on May 25, 2020. Video of his killing went viral on the Internet on May 26, 2020. Mass protests of the killing began on May 27 and 28, 2020, in large cities around the U.S. Laura Wainman, FROM UNREST TO JOY, DC'S WEEK OF GEORGE FLOYD PROTESTS MADE SPACE FOR A SPECTRUM OF EMOTIONS, WUSA9 News, *available at: https://www. wusa9.com/article/features/producers-picks/timeline-george-floyd-protests-dc-one-week/65- 7f078101-df9d-4bf2-b630-9616a516d6f1*. Protests began in earnest in Washington, D.C. on May 29, 2020, and have continued every day since.

The term "civil disorder" means any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual. 18 U.S.C. § 232(a). District of Columbia Mayor Muriel Bowser Issued Order 2020-068, which instituted a curfew in the city effective May 31, 2020, because protests related to the George Floyd killing had resulted in "numerous businesses or government buildings [being] vandalized, burned, or looted." The order noted that these activities during a time period that included May 29, 2020.

15

## <u>CONCLUSION</u>

Probable Cause supports each of the charges in the Criminal Complaint. Accordingly, Defendant's case should be transferred to a United States District Judge and he should remain detained without bond pending trial.

<div style="margin-left: 50%;">

Respectfully submitted,
MICHAEL R. SHERWIN
Acting United States Attorney
New York Bar No. 4444188

</div>

By:     */s/ James B. Nelson*
         JAMES B. NELSON
         D.C. Bar No. 1613700
         Assistant United States Attorney
         Violent Crime & Narcotics Trafficking Section
         555 4th Street, N.W.
         Washington, D.C. 20530
         (202) 252-6986
         james.nelson@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on June 25, 2020.


By:  */s/ James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Violent Crime & Narcotics Trafficking
Section 555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov