UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 20-CR-109 (ABJ) |
| | : | |
| MICAH EUGENE AVERY, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' SUPPLEMENTAL BRIEF
IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through the United Sates Attorney for the District of Columbia and undersigned counsel, respectfully submits this supplemental brief in opposition to the defendant's motion to suppress and the defendant's argument regarding the suppression of text messages that was raised for the first time during the defense attorney's cross-examination of the Government's witness.

**PROCEDURAL HISTORY**

**1.    Defendant's Motion to Suppress Was Limited in Scope**

On January 15, 2021, the defendant filed a limited motion to suppress the "physical evidence" in this case. (Docket Entry 30). In support of that motion, the defendant rested exclusively on the claim that the officers had neither probable cause nor a warrant to seize or search him and, consequently, their actions violated the Fourth Amendment and all evidence must be suppressed. *Id.* at 2-4.

The Government filed its opposition to the defendant's motion on January 29, 2021, focusing its arguments on the issues raised in the motion to suppress—namely, the lawfulness of the arrest and search incident to arrest. (Docket Entry 31). As noted in the Government's Opposition, U.S. Park Police Officers observed Mr. Avery commit a crime and, therefore, had

1

probable cause to arrest him. *Id*. at 4. Consequently, the ensuing search of the defendant incident to his arrest was also lawful, and there is no legal basis to suppress evidence in this case. *Id.* at 5.

The defendant filed his reply on February 5, 2021, again limiting the scope of his argument to whether probable cause existed to support the arrest. (Docket Entry 32).

At 5:57 p.m. on May 10, 2021, the night before the suppression hearing, counsel for the defendant emailed government counsel to request that the seized cell phone be physically brought to the suppression hearing. In addition to being untimely, this request was not foreseeable given the defendant's limited basis for suppression of the evidence. Nevertheless, government counsel contacted Detective Sergeant Holmberg and learned that it was too late to check the cell phone out of evidence for the hearing the following day. Government counsel notified counsel for the defendant of that fact at 6:18 pm on May 10, 2021. At no time during this conversation did counsel for the defendant indicate that he was challenging the post-seizure search of the cell phone.[1]

**2.  Defendant Expanded the Scope of His Motion During Cross-Examination**

On May 11, 2021, the parties appeared for a hearing on the defendant's motion to suppress. Since the defendant's motion to suppress was limited to whether the officers had probable cause to arrest him, the Government limited its presentation at the suppression hearing to calling Detective Sergeant Holmberg, a witness with knowledge sufficient to address whether officers had probable cause for the arrest. As the Court found, Detective Sergeant Holmberg's testimony met

---

[1] The Government provided discovery in this case on December 2, 2020, which included a copy of the search warrant affidavit written by Detective Sergeant Holmberg requesting authorization to search the cell phone seized from the defendant. Thus, counsel for defendant was aware that law enforcement had applied for and obtained a warrant to search the phone, and that the text messages now in question were part of the alleged probable cause in support of that search warrant. Notwithstanding that knowledge, counsel for the defendant did not allege an improper ***search*** of the phone in his motion, arguing only that the ***seizure*** of the phone was unlawful. Indeed, counsel for the defendant did not allege any impropriety in the search warrant at all.

the Government's burden to show that the officers had probable cause to arrest the defendant, and that the evidence was seized incident to a lawful arrest.

For the very first time, during a blunderbuss cross-examination, counsel for defendant sought to expand the scope of the inquiry and sought to suppress the text messages that appeared on the face of the phone when it was seized. For the very first time, the defense articulated the theory that, if an officer touched a button on the phone to wake the phone and view the messages on the locked home screen, such an action would constitute an unlawful search. Lacking any previous legal or factual articulation of this new issue, the Court ordered supplemental briefing from the parties with the Government's submission due on May 18, 2021, and the defendant's reply due on May 25, 2021.

> Shortly after the hearing, the Court issued a Minute Order noting that:
>
> In connection with an issue raised during the suppression hearing . . . the Court takes notice of the following link:  https://support.apple.com/en-us/HT208081. At this time, *the record does not contain any statement from a person with knowledge of how and when the messages at issue in this case hearing were first viewed by any officer, or what if anything was done to make them available to be seen by the testifying officer when he directed that they be photographed. So in order to satisfy its burden to support their introduction, the government must fill that gap in the facts.* If the defense intends to continue to assert as fact that one must push a button or otherwise activate or unlock an Apple phone to be able to view text message notifications on a lock screen, and that, even if they were unopened, the messages would not appear on a lock screen 40 minutes after they were received, some evidence will be required. The submissions may include points and authorities concerning whether the viewing of the text messages required a warrant.

*Minute Order*, 5/11/2021 (emphasis added). The Court issued a subsequent Minute Order on May 13, 2021, that stated the following:

> The Court understands that "the defense position is that some action by Detective Lawson was necessary to bring the text message previews to appear on the lock screen," but it does not accept the bald assertion that it is "beyond common understanding" that messages could remain visible for 42 minutes. It may very well be "common understanding" that if they have never been opened, the message notifications re-appear automatically as soon as the phone is picked up, without any

>other action, even after 42 minutes. In any event, given the previous lack of clarity as to the location of the phone, and the questions that have been raised about how it operates, the government must permit the defense to examine it even though the hearing has already taken place. The defense may not re-set or re-program settings for how the phone handles and maintains text notifications.

*Minute Order*, 5/13/2021. In accordance with the Court's direction, the Government respectfully provides this supplemental briefing in response to the defendant's expanded motion to suppress.

## ARGUMENT

### I.  The Defendant's iPhone XS

The defendant contends that the officers would not have seen the text messages on his home screen unless they pressed buttons or otherwise attempted to search the phone without a warrant. This argument demonstrates a fundamental misunderstanding of the mechanics of the iPhone XS and iOS 13.[2] A person can wake the iPhone XS in several ways. By default, the iPhone XS is programmed with "Raise to Wake" enabled. Apple Support provides additional information on the Raise to Wake function on its website. *See https://support.apple.com/en-us/HT208081*. Unless the user specifically disables the Raise to Wake function, "[w]hen you raise your iPhone to look at it, it automatically wakes the Lock screen" and "[f]rom there, you can quickly check your notifications" among other functions. *Id.* However, raising the phone is not the only way to wake an iPhone X or later model. "With an iPhone X or later, you can also tap your screen to check your notifications," *id.*

Furthermore, even if a user disables the Raise to Wake function, the iPhone XS can be "woken" without pressing the side button or unlocking the phone. To wake a phone with the Raise to Wake disabled, the user need only tap the screen. *See* Apple Support, iOS 13, iPhone User

---

[2] Pursuant to a search warrant, law enforcement extracted data from the phone. According to the extracted information, the defendant's phone is an Apple iPhone XS and the software version installed was iOS 13.4.1. The Government will make this extraction available to the defense.

4

Guide, a*vailable at https://support.apple.com/guide/iphone/wake-and-unlock-iph5a0b5b9c5/13.0/ios/13.0.* The "tap" that is necessary to wake an iPhone only requires the user to "touch one finger lightly on the screen." *See* Apple Support, iOS 13, iPhone User Guide, Learn basic gestures to interact with iPhone, *available at https://support.apple.com/guide/iphone/learn-basic-gestures-iph75e97af9b/13.0/ios/13.0.* Therefore, even an inadvertent light tap to a locked phone, with the Raise to Wake setting disabled, will wake the phone, illuminating the locked screen and allowing the user to view the notifications available on the lock screen.[3]

During the suppression hearing, the Government presented the testimony of Detective Sergeant Holmberg and admitted Exhibit 8. Exhibit 8 is a photo of the defendant's iPhone from the night of the arrest. From this exhibit alone, we know that at the time law enforcement viewed the front of the phone, the defendant's phone was set to display his text messages on the lock screen and that the phone had not been unlocked. We know that law enforcement did not unlock the phone and that the defendant's phone was set to display his messages on the lock screen because the lock symbol is present at the top of the screen and the messages were in fact still persistent until at least 47 minutes after the first message was received. Text notifications that appear on the lock screen will remain on the lock screen until the user dismisses the notifications or unlocks the phone. Thus, if the officers *had* unlocked the defendant's cell phone, as he now contends, those text messages would have disappeared.

Should the Court require additional testimony regarding how law enforcement handled the phone, the Government respectfully requests the opportunity to present the testimony of Detective Lawston. The Government anticipates that Detective Lawston will testify that after the phone was

---

[3] Should the Court require additional testimony on the mechanics of the iPhone XS and iOS 13, the Government respectfully requests the opportunity to present testimony from a witness with knowledge.

seized, he placed the phone in his pocket. When Detective Lawston removed the phone from his pocket the front screen illuminated, and the messages were visible on the lock screen. We anticipate that the evidence will show that law enforcement did not take deliberate action or deliberately press the side button in order to wake the phone to see what was on the screen. Furthermore, when evidence is seized, law enforcement must process and inventory the pieces of evidence or property. We anticipate that Detective Lawston will testify regarding the method he took to log and place the phone into evidence. As is apparent from the property log in this case (previously produced in discovery to the defense), Detective Lawston visually inspected and inventoried the phone and noted the kind of phone, color of the phone, color of the case, and the fact that the back of the phone was shattered.

## II.     The Messages Were in Plain View and Should Not Be Suppressed

Because the defendant's cell phone was seized during a search of his person incident to a lawful arrest, the physical phone should not be suppressed. Likewise, the text messages in question should not be suppressed because they were in plain view on the lock screen when the phone was seized and discovery of the text messages was inevitable.

The Supreme Court has made clear that officers can seize cell phones incident to arrest, but must generally secure a search warrant before searching the contents. *Riley v. California*, 573 U.S. 373, 386-88 (2014). Further, the plain view doctrine generally permits an officer to seize an incriminating item in "plain view" as long as he has "not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made." *Kentucky v. King*, 563 U.S. 452, 263 (2011); *see also Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Although the officer will usually need a warrant to search the contents of the phone, he need not avert his eyes from incriminating information that is displayed on the phone's exterior screen, or appears while the officer is lawfully attempting to place the phone in airplane mode or to disable the automatic

locking feature. *See, e.g.*, *United States v. Wurie*, 728 F.3d 1, 2, 15 (1st Cir. 2013) ("The officers were able to see the caller ID screen, and the 'my house' label, in plain view."), *aff'd Riley*, *supra*; *cf. Horton v. California*, 496 U.S. 128, 133 n.5 (1990) (officer's mere observation of objects from lawful vantage point without seizing them does not implicate the Fourth Amendment).

Upon viewing incriminating information in plain view, the officer may attempt to capture and preserve the information by, for example, photographing the screen. *See United States v. Karrer*, 460 F. App'x 157, 163-64 (3d Cir. 2012) (unpublished) (plain-view doctrine permitted seizure of child pornography image discovered during a warranted search of cell phone for other evidence). Furthermore, officers may take reasonable precautions to ensure that the evidence on a phone remains secure while a warrant is obtained, including steps that may require limited interaction with the phone, *see Riley*, 573 U.S. at 387, 390, actions such as turning on airplane mode, disabling a locking feature, or turning off the phone – actions that would have caused the lock screen to wake.

Here, law enforcement lawfully viewed and obtained the text messages that appeared on the defendant's phone. After law enforcement recovered the defendant's phone during a search incident to a lawful arrest, the content of the messages was in plain view and clearly displayed on the lock screen of the defendant's iPhone XS. As Detective Sergeant Holmberg testified, he clearly saw the messages on the screen. There is no evidence in the record that Detective Sergeant Holmberg pressed a button on the phone to wake the lock screen. From Exhibit 8, a photo of the front of the phone, which was admitted during the May 11, 2021 suppression hearing, we know that the defendant's phone was set to display the content of messages even while the phone was locked. Furthermore, a person does not need to unlock the phone or deliberately press a button on the phone to wake the lock screen. The phone will wake simply by being raised or inadvertently

tapped. *See* Apple Support, iOS 13, iPhone User Guide, a*vailable at* https://support.apple.com/guide/iphone/wake-and-unlock-iph5a0b5b9c5/13.0/ios/13.0. The Government anticipates that further testimony will show that when Detective Lawston took the phone out of his pocket, the phone illuminated, displaying the messages on the lock screen. Therefore, the messages were in plain view on the lock screen and they would be admissible on that basis alone. *See, e.g.*, *United States v. Gomez*, 807 F. Supp. 2d 1134, 1142 (S.D. Fla. 2011) (discussing plain view doctrine and explaining that agents' observation of subject's name on defendant's cell phone clearly falls under the rubric of "plain view" and is thus there is no "search" of the cell phone's Caller ID for Fourth Amendment purposes).

Even if the officers *had* manipulated the phone in order to "wake" it, the text messages would have inevitably been discovered during the processing and inventorying of the evidence. When law enforcement processes evidence or personal property, law enforcement typically will note the physical state of the evidence, including whether the item is damaged, and particularly describe the piece of evidence. Here, the Government anticipates that further testimony will show that when Detective Lawston processed the phone, he particularly described the phone, including the type of phone, the color of the phone, the color of the case, and the fact that the back of the phone was shattered. In order to log this information, law enforcement was required to inspect the phone or flip the phone over from front to back or back to front. As noted above, this activity would be more than sufficient to "wake" the iPhone XS, even if "Raise to Wake" had been disabled. *See* Apple Support, *available at* https://support.apple.com/en-us/HT208081; https://support.apple.com/guide/iphone/wake-and-unlock-iph5a0b5b9c5/13.0/ios/13.0. While turning over and inspecting the phone, this would have caused the iPhone to wake by the force of the movement or the touching of the front of the phone.

### III. The Phone Was Lawfully Searched Pursuant to a Search Warrant

Moreover, law enforcement obtained a search warrant for the contents of the phone. On June 12, 2020, United States Magistrate Judge Robin M. Meriweather signed search warrant 20-SW-247, authorizing the search of the Apple iPhone recovered from the defendant's person. Therefore, law enforcement's search of the contents of the phone, and recovery of the messages, was lawful pursuant to the search warrant. *See Riley*, 573 U.S. at 403.

Moreover, because law enforcement acted with an objectively reasonable good-faith belief that their conduct was lawful, suppression of the text messages is not an appropriate remedy in this case. *See United States v. Manafort*, 313 F. Supp. 3d 213, 235 (D.D.C. 2018) (citing *United States v. Leon*, 468 U.S. 897, 920-22 (1984)). The officers acted reasonably when they viewed the clear content of the text messages visibly present on the lock screen of the defendant's phone and further sought a search warrant before examining the contents of the phone.

### CONCLUSION

Wherefore, Defendant's Motion to Suppress should be denied.

        Respectfully submitted,

        CHANNING D. PHILLIPS
        Acting United States Attorney
        D.C. Bar No. 415793

By:    */s/ Amanda Fretto*
        AMANDA FRETTO
        JAMES B. NELSON
        D.C. Bar No. 1018284
        Assistant United States Attorney
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 252-7268
        amanda.fretto@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the Electronic Case Filing (ECF) system, on May 18, 2021.

By: */s/ Amanda Fretto*
AMANDA FRETTO
D.C. Bar No. 1018284
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7268
amanda.fretto@usdoj.gov